IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03146-KLM

JULIE A. CARL,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court[1] on the **Social Security Administrative Record** [#9],[2] filed on March 12, 2014, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Carolyn Colvin, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (the "Act"). *See Compl.* [#1].  On July 18, 2014, Plaintiff filed an Opening Brief [#18] (the "Brief").  On August 18, 2014, Defendant filed a Response [#19].  No Reply was filed.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The Court has reviewed the entire case file and the applicable law and is sufficiently

---

      [1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See Consent Form* [#26]; *Order of Reference* [#27].

      [2] "[#9]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

advised in the premises.  For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.  Factual and Procedural Background

Plaintiff alleges that she became disabled on May 1, 2010, at the age of fifty-three. Tr. 137.[3]  On January 18, 2012, she filed for Title II disability insurance benefits.  Tr. 137. On May 24, 2013, a hearing was held before an Administrative Law Judge (the "ALJ").  Tr. 31.  On June 21, 2013, the ALJ issued a decision in which he determined that Plaintiff last met the insured status requirements of the Act on March 31, 2012.  Tr. 13.  He further determined that she did not engage in substantial gainful activity from her alleged onset date through her date last insured.  Tr. 13.  He found that she had three severe impairments during the relevant period: (1) "status post two knee replacements," (2) degenerative disc disease, and (3) carpal tunnel syndrome.  Tr. 13.  However, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  Tr. 19.  After reviewing the evidence of record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except she could perform work that allowed her to alternate between sitting and standing positions at will, provided that she remained productive.  The claimant could occasionally kneel, crouch, crawl and climb ramps and stairs but she could never climb ladders, ropes or scaffolds.  She could perform frequent handling and fingering with the right upper extremity.

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9-1, 9-2, 9-3, 9-4, 9-5, 9-6, 9-7, 9-8, and 9-9, by the sequential transcript numbers instead of the separate docket numbers.

Tr. 20. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff "was capable of performing past relevant work as an Accounting Clerk, a Route Account Clerk and a Patient Account Clerk" and that these jobs "did not require the performance of work-related activities precluded" by Plaintiff's RFC. Tr. 25. He therefore found Plaintiff "not disabled" at step four of the sequential evaluation. Tr. 26.

Plaintiff appealed to the Appeals Council, which denied her request for review of the ALJ's decision. Tr. 1-7. Therefore, the ALJ's decision became a final decision of the Commissioner for purposes of judicial review. 20 C.F.R. §§ 404.981.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision of the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues *de novo.  Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether

a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B.   Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not

disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision denying her supplemental social security income benefits. *Brief* [#12] at 1. Plaintiff brings four main challenges to the ALJ's findings. The Court addresses each of these arguments in turn.

**A.    Whether the ALJ Was Required to Consult a Medical Advisor**

Plaintiff argues that the ALJ should have consulted a medical advisor to determine the onset date of Plaintiff's depression. *Brief* [#18] at 35-36. Social Security Ruling ("SSR") 83–20, 1983 WL 31249, at *3, "calls for an ALJ to consult a medical advisor for assistance

if a claimant's onset date must be inferred from the medical evidence." *Kilpatrick v. Astrue*,

502 F. App'x 801, 805 (10th Cir. 2012).

The ALJ found that Plaintiff failed to establish severe depression prior to March 31,

2012, the date Plaintiff last met the insured status requirements of the Act.  Tr. 13, 18.

Plaintiff admits there was "a lack of evidence" in this regard, because Plaintiff did not start

psychiatric treatment until May 2013.  *Brief* [#18] at 36; Tr. 519.  However, Plaintiff points

to her medical records from the relevant period that indicate her diagnosis of depression

and the medications she took to combat the illness.  *Brief* [#18] at 36 (citing Tr. 270-344).

Plaintiff argues that a medical advisor's testimony was required because the onset date of

Plaintiff's depression had to be inferred from other facts in the record such as Plaintiff's

testimony and last date of employment.  *Brief* [#18] at 36.

Defendant argues that the ruling applies to establishing the onset date of disability

only when the ALJ has determined that Plaintiff was actually disabled at some point during

the relevant period.  *Response* [#19] at 19.  Under SSR 83-20:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.  In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.  In title II worker claims, the amount of the benefit may be affected . . . .  Consequently, it is essential that the onset date be correctly established and supported by the evidence, as explained in the policy statement.
>
> In title II cases, disability insurance benefits (DIB) may be paid for as many as 12 months before the month an application is filed.  Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the protection received.
>
> . . .
>
> POLICY STATEMENT: The onset date of disability is the first day an

individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s). Although important to the establishment of a period of disability and to the payment of benefits, the expiration of insured status is not itself a consideration in determining when disability first began.

1983 WL 31249, at *1.

In a case similar to the present one, *Bigpond v. Astrue*, 280 F. App'x 716, 717-18 (10th Cir. 2008), the claimant argued that the ALJ was required under SSR 83-20 to consult a medical advisor concerning the onset date of her cardiac disability. The claimant argued that the evidence with respect to the onset date of her cardiac disability was ambiguous. At the outset, the Tenth Circuit Court of Appeals noted that the ambiguity must relate to the relevant period, i.e., the time before the date last insured. Thus, the question was whether the evidence showed that the claimant's cardiac problems may have been disabling on or before the date last insured. Because the evidence demonstrated that the claimant's cardiac problems were not disabling prior to the date last insured, the Tenth Circuit held that the ALJ did not err in failing to consult with a medical advisor with respect to the onset date of her cardiac disability.

Here, in assessing Plaintiff's depression, the ALJ provided a lengthy, thorough discussion at step two of the analysis in which he discussed Plaintiff's medical record, work history, and testimony. Tr. 17-20. The ALJ determined that Plaintiff's depression was not a severe impairment at any time during the period she was insured under the Act. Tr. 17-

20. As the ALJ stated, "[t]he claimant's minimal treatment during the period relevant to this decision suggests that her mental impairments did not have at least more than a minimal effect on her ability to do work-related activity as of the date last insured . . . ."  Tr. 20. Thus, because substantial evidence supports the ALJ's determination that Plaintiff's depression was not disabling at any time during the relevant period, there was no need for the ALJ to consult a medical advisor to establish the precise date on which Plaintiff became disabled.  SSR 83-20, 1983 WL 31249, at *1; *Bigpond*, 280 F. App'x at 717-18.  Thus, the Court finds that the ALJ did not commit error by failing to consult a medical advisor.

## B.   Whether the ALJ Failed to Account for Fatigue and Mental Impairments

Plaintiff argues that, even if the ALJ's decision at step two was correct that Plaintiff's fatigue and mental impairments were not severe impairments, the ALJ erred by failing to consider those limitations at step four of the analysis when he determined Plaintiff's RFC. *Brief* [#18] at 31-35.  According to SSR 96–8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996):

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

Plaintiff argues that the ALJ did not account for Plaintiff's "well-documented limitations from depression and fatigue in the RFC."  *Brief* [#18] at 31.  In support, Plaintiff provides a thorough list of evidence demonstrating Plaintiff's history of fatigue and depression.  *Id.* at

31-35.

Even though the ALJ found that Plaintiff's fatigue and psychological impairments were not severe impairments during the relevant period, he considered these impairments when determining Plaintiff's RFC. He first noted that Plaintiff discussed her depression and fatigue when she applied for disability insurance benefits. Tr. 20. He then stated:

> The claimant's activities of daily living further suggest that her conditions were not as limiting as alleged. At her March of 2012 consultative examination, the claimant reported that depression and fatigue limited her ability to perform activities for more than several hours at a time. However, she noted that she was able to get herself out of bed, bathe herself, dress herself and perform chores around the house without any difficulty. Her ability to perform these tasks, albeit with some limitations due to fatigue, suggest that she retains physical abilities consistent with those contemplated by the above-referenced residual functional capacity. This evidence is not consistent with the claimant's allegations, made through her representative, that she cannot perform the full range of sedentary or light exertional work and that she therefore cannot meet the demands of her past relevant work.

Tr. 23 (citations to the record omitted).

The ALJ clearly complied with the requirement of SSR 96–8p that he consider Plaintiff's non-severe impairments at step four of the analysis. Beyond this, Plaintiff's argument "is merely an invitation to the [C]ourt to reweigh the evidence and substitute its judgment for that of the ALJ." *Slaughter v. Colvin*, No. 13-2203-JWL, 2014 WL 3557633, at *6 (D. Kan. July 18, 2014). However, it is not the Court's role to reweigh the evidence. *Perez-Leeds v. Colvin*, __ F. App'x __, __, No. 14-2069, 2014 WL 7375618, at *4 (10th Cir. Dec. 30, 2014). It is clear from a review of the ALJ's decision that he thoroughly considered all evidence and explained why he chose not to put parameters on Plaintiff's ability to work based on her alleged fatigue and psychological impairments. *See* Tr. 17-20, 23; *Clifton*, 79 F.3d at 1009. As noted above, the ALJ need not specifically "reference

everything in the administrative record." *Wilson*, 602 F.3d at 1148.   Here, the ALJ's analysis of the record demonstrates that substantial evidence supports his conclusion. *See id.* at 1140.   The evidence analyzed and cited by the ALJ is not "overwhelmed by other evidence in the record," including the evidence cited by Plaintiff.   *Brief* [#18] at 31-35; *Grogan*, 399 F.3d at 1261-62.   Accordingly, the Court finds that the ALJ did not err by failing to impose RFC limitations based on Plaintiff's alleged fatigue and psychological impairments.

**C.     Whether the ALJ Erred Regarding Plaintiff's "Light Work" RFC Assessment**

Plaintiff argues that the ALJ erred by finding that she was capable of light work with an at-will sit/stand option, because this assessment is inconsistent with the Dictionary of Occupational Titles ("DOT").   *Brief* [#18] at 29-31.   The ALJ found that Plaintiff's RFC permitted her to perform light work, so long as it allowed her to alternate between sitting and standing at will.   Tr. 20.   Plaintiff argues that this is inconsistent with the DOT, which specifies "standing" as "being on one's feet in an upright position without moving about" and "light work" as standing for up to six hours a day in "an upright position without moving about."   *Brief* [#18] at 30.   Plaintiff argues that this means that her RFC is actually in the sedentary range and that she cannot perform her past work as a Route Account Clerk, contrary to the findings of the ALJ.   *Id.*

The Court need not determine whether Plaintiff's argument is correct, because even if it were, the ALJ's alleged error would be harmless.   The ALJ found that Plaintiff could perform two other jobs that she had previously held, both of which are generally performed at the sedentary level: Accounting Clerk and Patient Account Clerk.   Tr. 25.   There is no requirement that a claimant must be able to perform all past relevant work; so long as she

can continue to perform at least one job, she will be found to be not disabled.  20 C.F.R. §§ 404.1520(f) (stating that an individual who can perform past relevant work will be found not disabled); 404.1560(b)(2)-(3) (stating that if a claimant can meet the demands of past relevant work, whether as it is generally performed in the national economy or as the claimant actually performed it, then she will be found not disabled).  Thus, Plaintiff's alleged inability to meet the demands of her previous work as a Route Account Clerk is immaterial, because she could work as an Accounting Clerk or a Patient Account Clerk.  Accordingly, Plaintiff's argument that the ALJ committed reversible error on this point is without merit.

**D.    Whether the ALJ Failed to Adequately Weigh the Treating Sources' Opinions**

Plaintiff argues that the ALJ failed to adequately weigh the opinions of Plaintiff's three treating sources: (1) Timothy Allen, M.D. ("Dr. Allen") of Fort Collins Neurology, (2) Brienne Loy, M.D. ("Dr. Loy") of Family Health Care of the Rockies, and (3) Harris Jensen, M.D. ("Dr. Jensen"), a psychiatrist. *Brief* [318] at 39-45.  Plaintiff argues that the ALJ erred by failing " to provide specific and legitimate reasons for disregarding the RFC opinions" of these treating sources.

At the outset, the Court notes that a treating source's opinion regarding a claimant's disability status is not a "medical opinion" to which the ALJ is required to give any weight. *Davison v. Colvin*, __ F. App'x __, __, No. 14-1122, 2014 WL 7240066, at *6 (10th Cir. Dec. 22, 2014).  Rather, an opinion on the ultimate issue of a claimant's disability status is a legal determination reserved to the Commissioner, and a treating source's opinion on this issue is "never entitled to controlling weight or given special significance." *Id.* (citing 20 C.F.R. § 404.1527(d)(1); SSR 96–5p, 1996 WL 374183, at *1, *2, *5 (July 2, 1996).

Otherwise, however, treating physicians' opinions are generally given controlling

weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Even if a treating

physician's medical opinion is not entitled to controlling weight, "[t]reating source medical

opinions are still entitled to deference and must be weighed using all of the factors provided

in 20 C.F.R. § 404.1527." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989).  Those

factors are:

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment
> provided and the kind of examination or testing performed; (3) the degree to
> which the physician's opinion is supported by relevant evidence; (4)
> consistency between the opinion and the record as a whole; (5) whether or
> not the physician is a specialist in the area upon which an opinion is
> rendered; and (6) other factors brought to the ALJ's attention which tend to
> support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c).

Although the factors listed above are to be considered in weighing medical opinions, the

Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is]

'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*,

509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300).

The ALJ discussed the opinions of Dr. Allen, Dr. Loy, and Dr. Jensen at length to

explain why he gave their opinions little weight.  Tr. 19, 24.  Regarding Dr. Allen, the ALJ

stated:

> The undersigned gives little weight to the March of 2013 opinions offered by
> Dr. Allen.  He indicated that the claimant had heart-related exertional
> limitations.  He stated that the claimant needed to limit repetitive activities
> with the bilateral upper extremities to approximately two hours at a time and
> that she would require a large break between activities of two hours.  As
> discussed above, the claimant did not have a severe cardiovascular condition
> during the period relevant to this decision.  Dr. Allen's opinions apparently
> focus on the claimant's functioning after her date last insured and therefore

the undersigned gives little weight to those opinions.

Tr. 24 (internal citations omitted).  Plaintiff argues that the ALJ erred regarding the onset of Plaintiff's heart condition, and that he erred by disregarding the restriction with respect to Plaintiff's right upper extremity. *Brief* [#18] at 39-41.  However, the ALJ did not state that Plaintiff's heart condition did not begin until after the date last insured.  Rather, the ALJ accepted that Plaintiff did have a heart condition during the relevant period, but he found that it was minor enough to not be deemed a severe impairment at step two of the analysis. Tr. 16, 24.  Similarly, the ALJ restricted the use of Plaintiff's right upper extremity to only "frequent" use in the RFC.  Tr. 20.  Under the DOT, "[a]n activity or condition is considered 'constant' when it exists two-thirds or more of the time; it is considered 'frequent' when it exists from one-third to two-thirds of the time; and it is considered 'occasional' when it exists up to one-third of the time." *Carson v. Barnhart*, 140 F. App'x 29, 37 (10th Cir. 2005).  Thus, the ALJ appears to have taken Plaintiff's upper-right-extremity limitation into account, although he did not limit Plaintiff as severely as Dr. Allen would have.  Given these considerations and its review of Dr. Allen's opinion, the Court finds that the ALJ's decision is sufficiently specific to make clear the weight he gave to Dr. Allen's medical opinion and the reasons for that weight. *See Oldham*, 509 F.3d at 1258.

Regarding Dr. Loy, the ALJ stated:

The undersigned gives little weight to the May of 2013 opinions offered by [Dr. Loy].  She opined that the claimant could rarely lift ten pounds.  She further opined that the claimant could sit for 60% of a workday and that the claimant could stand and walk for a total of 30% of a workday.  Dr. Loy indicated that the claimant could perform only minimal hand movement due to severe carpal tunnel syndrome.  Dr. Loy opined that the claimant was easily distracted and unable to focus due to pain and fatigue, noting that the claimant's symptoms constantly interfered with her attention and concentration.  She concluded that the claimant would miss three or more

days of work due to her impairments and need for treatment. These limitations are extreme compared to the claimant's level of treatment during the period relevant to this decision and compared to the claimant's performance during the consultative examination. Moreover, Dr. Loy offered her opinion well after the claimant's date last insured. For these reasons, the undersigned gives very little weight to Dr. Loy's opinions.

Tr. 25 (internal citations omitted). Plaintiff argues that the ALJ was vague regarding his reasoning for finding that Dr. Loy's proposed limitations on Plaintiff's abilities were "extreme." *Brief* [#18] at 42-43. Plaintiff also argues that the ALJ erred by giving very little weight to Dr. Loy's opinion on the basis that the opinion was provided ten months after the date last insured. *Brief* [#18] at 42-43.

The Court disagrees with Plaintiff's argument. First, the ALJ had already thoroughly discussed Plaintiff's treatment during the relevant period throughout his decision. *See* Tr. 13-24. Second, although Plaintiff had been treated during the relevant period at the facility where Dr. Loy works, there appears to be no question that she saw Dr. Loy only once, long after the date last insured. *Brief* [#18] at 43. Tr. 440-43. Third, medical records from March 2012, the end of the period for which Plaintiff was last insured, demonstrate a much greater performance level than that suggested by Dr. Loy ten months later. Tr. 24, 351, 482-85. Given these considerations and its review of Dr. Loy's opinion, the Court finds that the ALJ's decision is sufficiently specific to make clear the weight he gave to Dr. Loy's medical opinion and the reasons for that weight. *See Oldham*, 509 F.3d at 1258.

Finally, regarding Dr. Jensen, the ALJ stated:

The undersigned gives very little weight to the May of 2013 opinions offered by Dr. Jensen. He opined that the claimant had up to marked cognitive limitations and up to marked social limitations. He also noted that the claimant had limitations in activities of daily living due to her physical conditions. Dr. Jensen concluded that the claimant was "100% disabled" and that she would never be able to work. The determination of disability is one

> reserved solely for the Commissioner of Social Security pursuant to Social
> Security Ruling 96-5p.  Moreover, Dr. Jensen did not treat the claimant until
> well after her date last insured.  The claimant's minimal treatment during the
> period relevant to this decision suggests that her mental impairments did not
> have at least more than a minimal effect on her ability to do work-related
> activity as of date last insured, contrary to the opinions of Dr. Jensen.

Tr. 19.  Plaintiff concedes that her argument regarding Dr. Jensen's treatment of her, which

began fourteen months after the date last insured, is the weakest of any regarding the

treating physicians.  *Brief* [#18] at 44.  However, she argues that "the mental health

diagnosis and symptoms were documented throughout the record," and the ALJ erred by

failing to give Dr. Jensen's opinion at least some weight and include some restrictions in

the RFC in connection with Plaintiff's depression and fatigue.  *Id.*  The Court has already

addressed this argument in connection with two of Plaintiff's other arguments.  *See supra*

§§ III.A., B.  Thus, in consideration of the Court's earlier discussion and its review of Dr.

Jensen's opinion, the Court finds that the ALJ's decision is sufficiently specific to make

clear the weight he gave to Dr. Jensen's medical opinion and the reasons for that weight.

*See Oldham*, 509 F.3d at 1258.

The Court may not reweigh the evidence or substitute its judgment for that of the

ALJ and the Commissioner.  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005);

*White v. Barnhart*, 287 F.3d 903, 905, 908, 909 (10th Cir. 2001).  However, the conclusions

reached by the ALJ must be reasonable and consistent with the evidence.  *See Glenn v.*

*Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if,

considering the evidence as a whole, there is sufficient evidence which a reasonable mind

might accept as adequate to support a conclusion).  An ALJ must evaluate every medical

opinion in the record, although the weight given each opinion will vary according to the

relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)).  The ALJ has met these standards.  Accordingly, the Court finds that the ALJ did not err in his treatment of Plaintiff's treating medical sources.

## IV.  Conclusion

The record contains substantial evidence from which the ALJ concluded that Plaintiff was not entitled to benefits under the Act during the time relevant to this case.  The ALJ's decision was based upon substantial evidence and is free of reversible legal error. Accordingly,

IT IS HEREBY **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  January 29, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge